Marrillo. May it please the court, good morning, my name is Jesse Siegel. I represent Joel Jesus Marrillo in this case. Mr. Marrillo is scheduled to be released on January 19, 2018, which I am continuing to be surprised is only next year. Had the district court granted his motion for a sentencing reduction to give him the same benefit that he enjoyed when he was sentenced, that is a sentence 26% below the low end of the sentencing guidelines, he would have been released about five months ago. The district court abused its discretion when it denied the motion for a sentencing reduction because it failed to consider the strong public policy in favor of giving people who cooperate a meaningful benefit in order to encourage others to cooperate. In particular . . . Is that an abuse of discretion? I mean, the Supreme Court says sentencing judges can sentence based on policy disagreements. Is it an abuse of discretion if a particular judge doesn't want to give as much credit for cooperation as most judges would? I think that that would be the explanation if we were talking about the sentence imposed in the first instance as I was about two years ago, and I lost that argument. However here, it becomes something more than that because what we have is we have United 110B2B, and that is a further emphasis on the public policy behind giving a cooperator a meaningful benefit, and what it does is it provides an exception to the normal rule that applies, which says that a person's sentence may not be adjusted to below his amended guidelines range where the person originally received a sentence below his guidelines or her guidelines as the result of a government motion pursuant to Section 5K1.1. You know, we have a district judge who here explained her reasoning. She acknowledged his substantial assistance to the prosecution, but she deemed it outweighed by the seriousness of his drug crimes, which she stated undoubtedly ruined victims' lives and then observed that your client was a far more extensive drug dealer than the two other dealers against whom he had cooperated. Now these are factors that I would think a district judge could consider in deciding the value of the cooperation, so how is this an abuse of discretion? Well because, first of all, those were the findings the court made during the original sentencing, which were then reiterated. This isn't a bazaar where, you know, you trade parts of a sentence. In the end, the district court has to decide that the sentence imposed adequately deals with the seriousness of the crime, deterrence, the role of the defendant. At the time she had the original sentence, she decided a departure was warranted. Now she was given more discretion, but she thought that the factors didn't warrant any further consideration. Where's the abuse? Well, because the court doesn't explain what section, I'm just going to abbreviate it as B2B, seems to call for is why the court doesn't explain why that conclusion doesn't change when the guidelines come down. When the court originally sentenced Mr. Murillo. It's never required to impose a guideline sentence, much less a departure from it. It has to consider the statutory factors, the 3553A factors, and it explains why here it didn't think a further sentence reduction was warranted. I'm still having trouble how we conclude that a district judge is always required to give consideration for cooperation. Well, I think if a court doesn't give any consideration whatsoever for cooperation, I mean, that's a totally different situation and I'd be very . . . Well, those of us who've been on the district court bench know there's cooperation and then other times it seems that the defendant has not done that much. I'm not putting this case into any category. It seems though that the district judge gets to make that decision. But what happened though was during the initial sentencing, the district court tied the sentence that was imposed to the sentencing guidelines and she said that had Mr. Murillo not cooperated, she would have given a sentence at the high end of the sentencing guidelines. So now we have a situation where the sentencing . . . The range would have been . . . Was 135. . . . lower. No, but without cooperation, as I understand it, the range would have been 70 to 87 months. That is correct, although there was a question of, well, it would have only been that had Mr. Murillo qualified for the safety valve because he was charged with a mandatory minimum of sentence of 10 years and the argument was made that in that instance he would have had the safety valve, in which case he would have disclosed the additional activities, which I think is questionable actually. But to be fair, that would be, I assume, the government's response. I think that's the fair response to that point. But here's the question to me, is if the judge said I would have given him a sentence at the high end of his guidelines and his guidelines were 135 to 168, so therefore I'm giving him a sentence that's 35 months below the low end of those guidelines or 26 percent below the low end of those guidelines, and now the guidelines change. And now the guidelines are 108 to 135 months. So at the very least, it would seem to me that the district court should have explained why given that fact, his sentence shouldn't be lowered to reflect that change. A hundred wasn't a magic number. It wasn't just we've looked at everything and I'm pulling a hundred out of the air. No, a hundred was related to the guidelines that he was facing and he got a sentence. And that's the salient characteristic of a sentence imposed on a cooperator is the extent to which it's a benefit. You're asking, you're more or less asking for some mathematical reduction once the remand takes place under 3582. Well, that is what exactly what section B2B calls for. It says the defendant is eligible to be, for a sentence that's comparably below. In terms of eligible, may consider, et cetera, none of this is mandatory. Well, I just, you know, that's true, but it's almost a presumption. And if it's not a presumption, there's at least... I don't understand why it's a presumption. Judge Forrest indicated that she thought he deserved a sentence of 168 months. Now it was the high end of his guidelines, but she thought he deserved a sentence of 168 months. Not I'm using guidelines and I'm departing percentages from guidelines. I mean, judges think that he deserved to serve that time in jail. Now she had more flexibility under the guidelines, but she still thought his crime was serious enough to not warrant a further departure. I'm still hard pressed to know where we would look for authority to conclude that that's a, an abusive discretion, whatever other judges might've thought in similar circumstances. Well, I suppose what I'm asking the court to find, and I don't know if you want me to do this on... Just finish your sentence and then we'll give you time for your rebuttal. Okay, thank you. I suppose what I'm asking the court to find is that the court did not adequately consider, for example, the 3553 fact, sorry, the 3553 factors, which require a court to consider, among other things, the issue of general deterrence. And ultimately, if that's not persuasive, to find that this was simply... For a sentence to provide adequate deterrence, that's at page 63 of the appendix. Okay, thank you. We'll let you then rebut after the government has its opportunity to argue. May it please the court, Carl Metzner on behalf of the government. Judge Forrest did not abuse her discretion in denying the defendant's 3582 motion. She understood her authority and her ability to change his sentence if she chose to, especially after the government consented to a remand to ensure that was the case, that the judge in fact understood her authority. She noted that under the guideline and the statutory implementation of the guideline that she could, if she chose to, reduce the defendant's sentence to as low as 80 months. However, considering the defendant's offense and the nature of the cooperation he rendered, Judge Forrest, after considering the appropriate factors, decided not to amend the sentence. The government's position, as I understand it, that it would have been appropriate to reduce the sentence. Absolutely, and there's nothing inconsistent with that here, Your Honor. As the court knows, the discretion of the judge is exactly that. The judge takes into account the opinions of both sides and decides on her own, based on her own assessment of the facts and the law, what the appropriate sentence should be. The fact that the government took a position in support of that below does not change the fact in any way that Judge Forrest properly exercised her discretion. It does seem that the reduction in the guidelines had no impact on her thinking. Well, Your Honor, it may not have. And as Judge Radd, you pointed out— Is that appropriate? Yes, it is. And the reason, Your Honor, is that this is a sentence for this defendant and his conduct. Judge Forrest took into account all of the . . . It arguably is ignoring the starting point. I mean, the starting point is supposed to be the guideline range, and yeah, you can go up and down, but it arguably ignores the starting point then. Well, in this case, she didn't, Judge. She noted that she could go as low as eighty months. And so, even though that was a possibility, Judge Forrest said, under the facts of this case and this defendant's conduct and the cooperation that was rendered, I don't find it to be appropriate. I'm going to stand by my original sentence of one hundred months. That was within her discretion to do, and that's what's committed to the district court's discretion, to decide these issues despite or, in fact, contradicting the arguments, even if made by both sides. He might have been better off not cooperating, and so, you know, how do you respond to this? This is discouraging people from cooperating. Two points, Your Honor. First of all, as Mr. Siegel correctly noted, had the defendant actually safety-valved and provided the information about his drug activity, that would have been relevant conduct which would have changed his guideline range. So I don't accept the premise of what the range was, but there's a second reason as well, Your Honor. Cooperation gives additional . . . I understand from that that this is one of these cases where we didn't have full and complete cooperation. No, Your Honor. That's not what I mean. What I mean is when the defense is claiming what the guidelines would have been, they're excluding the additional information that would have been provided in a safety-valve proffer, which would have increased that number. The guidelines range would have increased. But the second point, Your Honor, about the benefit of cooperation, there is a secondary benefit that should not be ignored, which is a cooperating witness in the Southern District of New York, by acknowledging and pleading guilty to his entire range of conduct, forever protects himself from being further prosecuted by anybody for that conduct. So in this case, the government, obviously through this investigation, knew that Mr. Murillo was a serious drug dealer, knew from the investigation of the retired NYPD officer and the auxiliary officer who Mr. Murillo was. He retained further exposure for his drug dealing. By pleading guilty as a cooperator, he erased that exposure forever. So it's not just the benefit from the cooperation in this case . . . He did, Your Honor. If there's nothing else, the government would rest on its papers. Thank you. Mr. Speaker, you do have time in rebuttal. With regard to that last point, there's nothing in the record to indicate what Mr. Murillo's additional exposure or potential exposure would have been that is the additional benefit that the government points to. There's nothing in the record to tell us whether any of that was within the statute of limitations. Furthermore . . . Hypothetically, as to a cooperator, there is that benefit. Yes, but there's nothing in . . . That is the practice in the Southern District of New York that a cooperator has got to fess up, so to speak, and accept responsibility for all of the misconduct that that cooperator is engaged in. Correct. But whether that conferred in this instance an additional benefit on Mr. Murillo was purely theoretical, because that's only an additional benefit to him if he had exposure to that other conduct, if that other conduct predated the statute of limitations, if that other conduct was outside of this district . . . There's nothing specifically in the record. Correct. There's absolutely nothing in the record about that. Furthermore, to the argument that, well, he would have had to have talked about this during a safety valve proffer and his numbers would have gone up, well, yes and no. On a safety valve proffer, you don't have to tell about everything that you've ever done. What you have to do is you have to talk about the instant offense and conduct that's relevant to it. And again, there's nothing in the record to tell us how much his sentencing guidelines would have gone up, how that would have been either the same or different than what he revealed during cooperation proffers. I think Judge Chim was exactly correct. It does ignore the guidelines. And you know, I think it's really an interesting point . . . You have some questions. I'm just asking. I think the question raised a good point. But I think that there is something that's interesting here, which struck me, is that the section B2B . . . well, we always think about the idea that the sentence that's appropriate is in relationship to the guidelines that he faces here, she faces otherwise. We assume that it's some sort of either percentage reduction or it's some sort of a reduction off of that, that it's the starting place. But the fact of the matter is when a judge sentences a person who's cooperated, they're not obligated. They have to look at the sentencing guidelines among other factors and then they impose a sentence that's appropriate. Well, section B2B is the only place that I can find in the guidelines where the relationship between the sentence that's imposed on a cooperator and the sentencing guidelines is explicitly acknowledged. And it explicitly acknowledges it by saying that where the defendant received a sentence below his guideline range, he can have the benefit of a reduction in the guidelines to a point comparably below. So we go back to this discretion that the district court has. I don't disagree with you, by the way, that as a matter of practice, it might be better to give cooperators consistent with what the government was seeking in this case, a lower sentence because it sends a signal, frankly, to other would-be cooperators. But here we have wide discretion that's been given to a district court. I agree, but I think it is less in this instance where the district court has already gone on record by imposing a sentence that was a certain percentage below the sentencing guidelines. Now we have something concrete to start with rather than just this kind of amorphous what's an appropriate sentence. Thank you. Thank you. Okay. A matter under advisement. That concludes our calendar today. We stand adjourned. We stand adjourned.